UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD DUCKWORTH, | ) | Case No. 1:07 CV 3893 |
| | ) | |
| Plaintiff, | ) | Judge Patricia A. Gaughn |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Richard L. Duckworth seeks reversal of the Commissioner's decision denying his application for disability insurance benefits. Duckworth is a younger individual who claims an onset of disability due to gout or arthritis, diabetes mellitus and diabetic neuropathy on April 15, 2003. (Tr. 37, 55) Duckworth's application for benefits was denied by an ALJ on June 27, 2006, and the Appeals Council adopted this decision making it the final decision by the Commissioner. See 20 C.F.R. §404.981. Previously Duckworth had been found to be disabled due to asthma and knee/foot disorders for a closed period from September 28, 1998 through October 13, 1999. (Tr. 35-36). Following this closed period award, Duckworth worked in customer service related to accounting, as a custodian and in a punch press shop as a machine operator until 2004. (Tr. 67, 85). The ALJ found that Duckworth had not worked since January 19, 2004 (not April 15, 2003) (Tr. 18).

The ALJ found severe impairments of diabetes mellitus, diabetic neuropathy polyarthritis of the right knee, ankle and foot (Tr. 18), but the ALJ found no severe impairment due to gout (Tr. 13-14). The ALJ concluded that Duckworth could perform his past relevant work in customer service, and hence was not disabled (Tr. 18). In reaching this conclusion, the ALJ relied on the

1:07 CV 3893                                                                  2

testimonies from a medical adviser, Dr. Katzman and a vocational expert. Duckworth contends that he is disabled due to gout and this dispute has led to this appeal under 42 U.S.C. §405(g). This matter has been referred for report and recommended disposition.

*Standard of Review:*

The issues before this court must be resolved under the standard whether there is substantial evidence in the record to support the Commissioner's decision. Substantial evidence is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

*Sequential Evaluation and Meeting or Equaling the Listing of Impairments:*

The Commissioner follows a 5-step review process known as the sequential evaluation. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment. See §404.1520(a)(4)(i) and (ii) and §416.920(a)(4)(i) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1. See 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d). If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age,

1:07 CV 3893                                             3

education or prior work experience. See *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.")."At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is unable to perform [his] previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sect'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability.  *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Ellis v. Schweiker*, 739 F.2d 245 (6th Cir. 1984); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).

*Is Gout a Medically Severe Impairment?*

Duckworth argues that the ALJ erred in dismissing gout from consideration as a non-severe impairment. The ALJ noted Duckworth's complaints but explained that the medical record indicated episodes of severe pain in the right knee and sometimes right foot up to "four times a year." (Tr. 13, 346-47). The ALJ reasoned, "[w]hile there have been times when the claimant had a more acute episode such as when he was advised not to bear weight on his right foot because of localized right heel pain, associated with gout on July 8, 2004 (Exhibit B-4F, page 66), there is no indication of a

1:07 CV 3893                                              4

12 month period of associated disability, and on the date of the appointment had already reported some slight improvement with treatment since he was first examined six days earlier (page 67). (Tr. 14). Duckworth counters by referring to treatment notes from May 6, 2003, May 14, 2003, January 4, 2004, February 26, 2004, July 6-7, 2004, November 3, 2004, and December 28, 2005. The infrequency of these instances of reported gout do not establish that the ALJ's reliance on the July 8, 2004 medical note was error.

Moreover, the second step of the five step sequential evaluation is legally complex. At the second step of sequential evaluation the ALJ is to:

> . . . consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (See paragraph (c) of this section.)
>
> 20 C.F.R. § 404.1520(a)(4)(ii).

There are two disability definitional concepts commingled under 20 C.F. R. §404.1520(a)(4). First there is "severe" impairment. While regulations do not define what a "severe" impairment is, they do define " non-severe" impairment as, an impairment or combination of impairments which does not significantly limit basic functions as walking, standing, sitting, lifting, push/pulling, reaching, carrying or handling and seeing, hearing and speaking. See 20 C.F.R. §§404.1521(b)(1) and (2). The severity regulation is a tool to screen out claims that are totally groundless from a medical standpoint. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

1:07 CV 3893                                        5

Next, there is the durational requirement. A 12-month durational requirement exists which has a continuity requirement. As set forth in 42 U.S.C. §423(d)(1)(A), the term disability means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a *continuous period* of not less than 12 months. . . (emphasis supplied)

and see 20 C.F.R. §404.1509[1].

Both concepts of severe impairment and continuous duration are alloyed in the second step. Thus, "[c]laimants with impairments of insufficient duration are not disabled." *Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643, 113 Soc. Sec. Rep. Serv. 344 (6th Cir. 2006); and see *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988). Infrequent intermittent impairment flare-ups do not satisfy the duration requirement. The burden is on claimant to establish that the intermittent impairment would more than minimally affect the ability to work. See *Aragon v. Astrue*, 246 Fed Appx. 546, 550 (10th Cir. 2007); *Lisi v. Apfel*, 111 F. Supp. 2d 103, 110, 70 Soc. Sec. Rep. Serv. 680 (D. R.I. 2000)(2 gout attacks over 2 years). Consequently, the ALJ's decision was supported by substantial evidence.

---

[1] **§ 404.1509 How long the impairment must last.**

Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement.

20 C.F.R. § 404.1509

1:07 CV 3893                                6

Furthermore, any error is harmless. The ALJ did consider arthritis, including polyarthritis of the right knee, to be a severe impairment and Dr. Katzman testified that gout was a form of arthritis. (Tr. 395). Dr. Katzman observed that osteoarthritis and polyarticular gout had been diagnosed for Duckworth's right knee. (Tr. 15-16,18, 395-97). Duckworth also testified along this same line that one doctor said his problem was gout and the others said it was arthritis (Tr. 395). The argument is essentially a dispute over diagnosis. Given that the ALJ explored evidence of arthritis beyond the second step of the sequential evaluation, there was no error since the degree of restriction was evaluated by the ALJ under the rubric of arthritis and polyarthritis.

*Remediability:*

The other factor used by the ALJ to reject impairment due to gout was that "medication can be used to treat gout." (Tr. 13.) This matter becomes an issue under Duckworth's second argument when Duckworth states the Dr. Katzman indicated that he did not take into account gout when he assessed residual functional capacity because it was preventable (Tr. 407). Duckworth argues that the ALJ unreasonably relied on Dr. Katzman's testimony that Duckworth's gout was not a severe impairment and preventable.

A remediable condition does not qualify for disability insurance benefits. See *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967), *cert. denied*, 389 U.S. 993 (1967); *Awad v. Secretary*, 734 F.2d 288, 289-90 (6th Cir. 1984); *Hardaway v. Secretary*, 823 F.2d 922, 925 (6th Cir. 1987). In explaining why a remedial impairment must be excluded at the outset, the federal courts long ago explained:

1:07 CV 3893                                                 7

>   We believe that the evidence clearly shows that Claimant is the victim of a bladder ailment, probably a soft type stricture of the urinary tract. The Secretary found only that this condition was remediable. The issue then is whether there is substantial support in the record for a finding that Claimant's stricture of the urinary tract was remediable. It is established that a remediable ailment cannot be the basis of a claim under the Act. 20 C.F.R. 4021.1501(g). Title 42 U.S.C.A. §416(i)(1)(A) expressly states that disability must occur " * * * By reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration * * *.' (Emphasis added). An impairment which is presently capable of being classified as remediable cannot meet the requirement that it be 'of long-continued and indefinite duration'. We think it plain that the express terms of the Act require a reasonable showing of the permanence of the disability. 'Not until treatment has been tried and found unavailing can it be said that a reasonable certainty of permanence appears.'

*United States v. Hammond*, 87 F.2d 226, at 227 (5th Cir. 1937); and see *Bradey v. Ribidoff*, 298 F.2d 855, 857 (4th Cir. 1962) (quoting *Hammond*), *cert. denied*, 370 U.S. 951 (1962).

This principle is implemented through 20 C.F.R. §404.1530, that "In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." However, like most legal principles, there are exceptions and the disabling nature must be evaluated without regard to remediability if the claimant has no means to pay for treatment. *McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990). [2]

Dr Katzman questioned Duckworth if he had been prescribed medicine for gout. (Tr. 394).

---

[2] "Accordingly when indigency appears in the record then the claimant's conditions are to be evaluated initially in the absence of treatment to determine severity. The Secretary must determine whether McKnight's conditions are disabling, within the meaning of the regulations, in the absence of treatment. If, without regard to treatment, McKnight is found to have a disabling impairment, then the Secretary must determine if there is an affordable treatment available to McKnight that would prevent the disability from being a severe impairment under the statute and regulations."

*Id.*, 927 F.2d at 242.

1:07 CV 3893                                                8

Duckworth said he had taken medicine for gout about one year prior, but was not taking it "[b]ecause they haven't gave me any new medicine for that. It's old medicine." (Tr. 395). Duckworth then explained that there was a dispute over the gout *versus* arthritis diagnosis and that he as taking "arthritis medicine," that the doctors had inserted a needle (apparently into the affected joint), and that he was given Motrin for his gout (Tr. 395). Dr. Katzman explained that in contrast to Duckworth's evidence, the chronic form of gout has large amounts of uric acid crystals called tophi, and that gout is preventable in nearly all patients. (Tr. 407-08).[3] Further, Dr. Katzman stated that there were medical notes of non-compliance. (*Id.*) Finally, indigency was not a factor since medication was readily available to Duckworth through the Veterans Administration. (Tr. 121, 396). Dr. Katzman's testimony provided substantial evidence to support the ALJ's finding that gout could be discounted in assessing residual functional capacity as a remediable impairment.

*Did the ALJ err in assessing Residual Functional Capacity?*

Duckworth argues that "the ALJ erred when he failed to fully and fairly assess the limitations resulting from Mr. Duckworth's severe impairments." At issue is the ALJ's finding #5 where the ALJ determined that Duckworth could perform light work without climbing ladders, ropes or scaffolds, occasionally climb stairs and ramps, and can frequently, but not constantly manipulate (Tr. 18). Duckworth refers to his testimony from the administrative hearing where, for example, he stated he would need to stop typing after 20 minutes, walk only 20 minutes, his pain kept him from

---

[3] Duckworth's complaint of right toe pain in May 2003, was attributed to gout, but a tap was negative since "no crystals were seen." (Tr. 205, 207-08).

1:07 CV 3893                                    9

working, his feet tingle and he has pain with weight bearing, he has numbness in his hands and drops things, and some days he cannot get out of bed. (Tr. 377-382). The ALJ relied on the testimony of Dr. Katzman who assessed Duckworth from a more objective standpoint. Duckworth appears to be simply asserting a claim that his testimony is to be utilized and in effect be given full credence. Duckworth's second argument is effectively a challenge to the ALJ's credibility assessment of Duckworth's testimony.

      The role of the court is not to examine the credibility of claimant's testimony or resolve conflicting evidence but rather to determine whether substantial evidence supports the Commissioner's determination of disability within the meaning of the Social Security Act. See *Foster v. Halter*, 279 F.3d at 353. Credibility determinations track pain analysis. See *Felisky v. Bowen*, 36 F.3d 1027, 1038-39 (6th Cir. 1997); *McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996); *Walters v. Comm. of Soc. Sec.*, 127 F.3d 525, 531-32 (6th Cir. 1997); and see *Saddler v. Commissioner of Soc. Sec.*, 173 F.3d 429, 1999 WL 137621 (Table 6th Cir. March 4, 1999); 20 C.F.R. §404.1529(c)(3); §416.929(c)(3). The rule is,

> An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96-7p, 1996 WL 374186 (S.S.A.) at *1.

The ALJ's discussion of this issue must contain clearly stated reasons. *Felisky v. Bowen*, 35 F.3d at 1036, citing *Auer v. Secty. of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987). The Commissioner has elaborated on this point requiring that the administrative decisions, " must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must

1:07 CV 3893                                                    10

be sufficiently specific to make clear to the individual and to any subsequent reviewer the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling (SSR) SSR 96-7p, 1996 WL 374186 *1-2; *Saddler* at *2.

The ALJ acknowledged SSR 96-7p in assessing residual functional capacity. (Tr. 14-16). The format set forth in SSR 96-7p outlines the administrative evaluation process beginning with traditional two-prong *Duncan* pain analysis plus the additional regulatory considerations under 20 C.F.R. §404.1529(c)(3) and §416.929(c)(3).  See *Duncan v. Sec'y of Health & Human Services*, 801 F.2d 847, 853 (6th Cir. 1986); *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Under the two-prong pain analysis, there first must be a determination whether there exists an underlying medically determinable physical or mental impairment followed by the question whether the impairment would be reasonably expected to produce the individual's pain or other symptoms.  1996 WL 374186 at *2. There were underlying physical conditions for Duckworth's pain in his lower extremities and upper extremity neuropathy. (Tr. 15). The ALJ explained that EMG studies confirmed neuropathy in the upper extremities, but this condition had existed for years while Duckworth was working. The ALJ acknowledged arthritis, but noted that muscle strengths in the lower extremities were reportedly normal in September 16, 2004.  (Tr. 16, 337). The ALJ further relied on a residual functional capacity assessments from non-examining state agency physicians which state Duckworth is capable of light work. (Tr. 229-234), and Dr. Katzman's testimony that Duckworth is capable of light work. (Tr. 16).

1:07 CV 3893                                    11

The second question then is the reasonableness of the alleged debilitating pain. The regulatory considerations that follow require the ALJ to investigate subjective complaints of pain or other symptoms based on:

1. The claimant's daily activities;

2. The location, duration, frequency, and intensity of pain;

3. Precipitating and aggravating factors;

4. The type, dosage, effectiveness, and side-effects of medication to alleviate pain or other symptoms;

5. Treatment, other than medication claimant has received for relief of pain; and

6. Any other measures used to relieve pain (e.g. lying down or changing position).

7. Other factors concerning functional limitations and restrictions due to pain or other symptoms.

See SSR 96-7p, 1996 WL 374186 at *2; 20 C.F.R. §404.1529(c)(3)(i-vii); §416.929(c)(3)(i-vii).

The ALJ explored Duckworth's daily activities finding that, as described, they are inconsistent with a residual functional capacity for work (Tr. 16). In assessing the degree of pain, the ALJ referred to Dr. Katzman's testimony about Duckworth's drug-seeking behavior including the medical notes that there is no need for narcotics, that Duckworth was told to take his prescribed medications and perform exercises, but Duckworth was requesting narcotics.(Tr. 15). Next, the ALJ referred to Dr. Katzman's testimony about Duckworth's non-compliance with the treatment regimen for diabetes, including that he allowed his prescription for medications to expire. (Tr. 16). Finally, the ALJ covered the matter of side-effects, finding none that would interfere with past relevant work. (*Id.*).

1:07 CV 3893								12

Duckworth does not contest this analysis since he relies simply on his testimony concerning extremely limited daily activities. The ALJ did consider Duckworth's testimony and its implication for disability, but rejected it. Duckworth does not offer evidence to counter the ALJ's analysis under SSR 96-7p. Duckworth does, however, offer evidence under the sixth factor of other measures used to relieve pain pointing to Dr. Katzman's acknowledgment that in addition to the limitation to light and sedentary work, "that he does have a cane, which he uses from time to time and that should be factored into it." (Tr. 402).

The ALJ did not address the issue of cane use and it was not an element of the hypothetical question to the vocational expert. This error, though, was harmless. Past relevant work exists either in the form the claimant actually performed it or the way the job is generally performed. See *Garcia v. Secretary of Health and Human Services,* 46 F.3d 552, 556-57 (6th Cir.1995).[4] The vocational expert testified that Duckworth's past relevant work in customer service was performed as sedentary work. (Tr. 411). The Commissioner is correct citing *Gaffney v. Bowen*, 825 F.2d 98, 101-02 (6th Cir. 1987), that use of a cane does not impinge on the ability to tolerate prolonged sitting necessary for sedentary work. Accordingly, the ALJ was supported by substantial evidence insofar as Duckworth

---

[4] "Social Security Ruling 82-61 outlines the Secretary's framework for evaluation at step four: First, the Secretary will consider whether the claimant has the residual functional capacity to perform the functional demands and duties of a past job as actually performed by the claimant. SSR 82-61, 1975-82 Soc. Sec. Rep. Serv. 836, 1982 WL 31387 (S.S.A.); see also SSR 82-62, 1975-82 Soc. Sec. Rep. Serv. 809, 1982 WL 31386 (S.S.A.). If so, the claimant is not disabled. If not, the Secretary will consider whether the claimant can perform the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61, 1982 WL 31387 (footnote omitted)."

*Garcia v. Secretary of Health and Human Services,* 46 F.3d 552, 556-57 (6th Cir.1995)

1:07 CV 3893                                                    13

could perform his *sedentary* past relevant work in customer service. However, the ALJ's lack of consideration of the use of a cane in resolving pain allegation credibility results in relegating the balance of the ALJ's determination as not supported by substantial evidence. Nevertheless, there was substantial evidence supporting the ALJ's decision to end sequential evaluation at the fourth step on the finding that Duckworth was capable of performing past relevant work with respect to his prior sedentary work in customer service.


### *CONCLUSION AND RECOMMENDATION*

For the foregoing reasons plaintiff Richard Duckworth's arguments fail to demonstrate error in the final administrative decision. The Commissioner's decision accordingly is supported by substantial evidence, and it is recommended that the decision of the Commissioner denying disability insurance benefits be affirmed as supported by substantial evidence with judgment entered for the Commissioner.

                                                            s/James S. Gallas
                                                       United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: January 22, 2009

1:07 CV 3893 14